IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KAHAN S. DHILLON, JR.,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. 1:20-cv-2197 |
| **LINDA H. LAMONE, et al,** | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR A PRELIMINARY INJUNCTION**

Kahan S. Dhillon, Jr., Plaintiff, by his attorneys, submits the following memorandum in support of his Motion for a Preliminary Injunction.

**INTRODUCTION**

This First Amendment case arises out the impact of the COVID-19 pandemic and governmental orders in response to the pandemic has had and continues to have upon Mr. Dhillon's ability to collect the signatures that Maryland law requires that he obtain to appear on the November 2020 General Election ballot as an independent candidate for the office of Mayor of Baltimore City. Even the recently reduced signature requirement of Maryland Code, Election Law ("EL") § 5-703 imposed by this court on July 20, 2020, cannot be met under current circumstances. Maryland's signature requirement under current conditions impermissibly burdens Mr. Dhillon's First Amendment rights and must be reduced or excused.

As more thoroughly addressed in his Verified Complaint, Mr. Dhillon is likely to succeed on the merits of his First Amendment claim. Since the First Amendment requires a reduction or removal of analogous signature requirements in light of the COVID-19 pandemic.

1

*See Libertarian Party of Illinois, et al. v. Pritzker,* 2020 WL 1951687 (N.D. Il. April 23, 2020), *stay denied*, 2020 WL 3421662 (7th Cir. June 21, 2020); *Esshaki v. Whitmer*, 2020 WL 1979126, at *2, *12 (E.D. Mich. Apr. 20, 2020), *aff'd in part and remanded*, 2020 WL 2185553. __ Fed. Appx. __ (6th Cir., May 5, 2020); *Garbett v Herbert*, 2020 WL 2064101 (April 29, 2020).

The harm caused by the Defendants' enforcement of EL § 5-703 to Mr. Dhillon is irreparable. In First Amendment cases, irreparable harm is presumed. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). If Mr. Dhillon cannot appear on the November 2020 General Election ballot, that electoral opportunity never can be regained. The burden on the Defendant to lower the signature requirement is minimal. While the burden to remove the requirement is more substantial, drastic measures are necessary due to the coronavirus pandemic that has plagued Maryland and the United States since February 2020. The Defendants' interests in regulating elections would not be significantly impacted by allowing Mr. Dhillon to appear on the 2020 General Election ballot.

## PROCEDURAL HISTORY

This action was commenced by the filing of a Complaint in this Court on July 28, 2020.

## STATEMENT OF FACTS

Mr. Dhillon incorporates by reference the Statement of Facts contained in his Verified Complaint.

## ARGUMENT

### I.     STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A court may enter a preliminary injunction if the party seeking the injunction can make a clear showing that it is entitled to relief. *Winter v. Natural Resources Defense Council,* 555 U.S.

7, 129 S.Ct. 365, 375-76 (2008); *Real Truth About Obama, Inc. v. Federal Election Commission,* 575 F.3d 342, 345-46 (4th Cir. 2009);[1] *see also, Holbrook v. Univ. of Virginia,* 706 F. Supp. 2d 652, 654 (W.D. Va. 2010) (a preliminary injunction should be granted "if the moving party clearly establishes entitlement to the relief sought.") (quotations omitted).

A plaintiff seeking preliminary injunctive relief must establish:

> "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of the equities tips in his favor; and [4] that an injunction is in the public interest.'

*WV Ass'n of Club Owners and Fraternal Services, Inc v Musgrave,* 555 F.3d 292, 298 (4th Cir. 2009) (quoting *Winter*, 129 S.Ct. at 374); *Real Truth About Obama,* 575 F.3d at 346 (same). All four requirements must be met in order for a preliminary injunction to be granted. *Dewhurst v. Cnty. Aluminum Co.,* 649 F.3d 287, 290 (4th Cir. 2011).

As this is a non-commercial case involving constitutional rights, and a balance of hardships weighs significantly in Plaintiff's favor, the security bond requirement of Rule 65(c) should be waived.

## II.  MR. DHILLON IS LIKELY TO PREVAIL ON THE MERITS

The extraordinary circumstances from which this case arises make it any easy one to decide. Mr. Dhillon requested that the Maryland State Board of Elections ("SBE") either reduce the number to 0.1% of signatures he must collect in order to appear on the November 2020 General Election Ballot and extend the deadline to August 28, 2020. In the alternative, due to the unprecedented pandemic caused by COVID-19, Mr. Dhillon requests that the signature requirement be removed for the 2020 election. The undersigned spoke with counsel for SBE on July 29, 2020, and they are refusing to do so absent a court order.

---
[1]

Mr. Dhillon is entitled to the relief he requests because Maryland's petitioning requirements, as applied here, cannot withstand constitutional scrutiny under the analytic framework the Supreme Court established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

Under the Supreme Court's *Anderson-Burdick* analytic framework, a reviewing court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. This framework establishes a "flexible standard," according to which "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that impose "severe" burdens are subject to strict scrutiny. *See id.* (citations omitted). But in every case, "However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 190 (2008) (citation and quotation marks omitted).

The burden that Maryland law imposes on Plaintiffs' First and Fourteenth Amendment rights as applied here is undeniably severe. Since Governor Hogan's Declaration of State of Emergency on March 5, 2020, Mr. Dhillon's ability to collect signatures has been impacted. Most significantly from March 30, 2020, through May 15, 2020, the entire State of Maryland was under

4

a stay-at-home order. Through mid-June 2020, Baltimore City, a significant part of the Seventh Congressional District, continued to be under a stay-at-home order. Serious impediments related to the COVID-19 pandemic continue to impede Mr. Dhillon's ability to collect signatures.

In a case arising from factually indistinguishable circumstances, Chief Judge Pallmeyer of the Northern District of Illinois held that Illinois' petitioning requirements were unconstitutional as applied in the context of the COVID-19 pandemic. *See Libertarian Party of Illinois., et al. v. Pritzker, et al.*, 2020 WL 1951687 (N.D. Ill. April 23, 2020). As Judge Pallmeyer explained:

> The combined effect of the restrictions on public gatherings imposed by Illinois' stay-at-home order and the usual in-person signature requirements in the Illinois Election Code is a nearly insurmountable hurdle for new party and independent candidates attempting to have their names placed on the general election ballot. The problem is exacerbated ... by the fact that the "window" for gathering such signatures opened at nearly the same time that Governor Pritzker first imposed restrictions. ... Notably, from the outset of these proceedings, even Defendants have acknowledged that the ballot access restrictions must be relaxed, in some shape or form, to account for the havoc that COVID-19 has wreaked.

*Id.* at *5 (citations omitted).

Accordingly, Judge Pallmeyer entered an order granting the plaintiffs' motion for a preliminary injunction. *See Libertarian Party of Illinois.*, No. 1:20-cv-02 112, Dckt. No. 27 (N.D. Il. April 23, 2020), *modified by* Dckt. No 36 (N.D. Ill. May 15, 2020). The order provides substantial relief from Illinois' petitioning requirements. Specifically, it: (1) grants the plaintiff political parties ballot access in Illinois' 2020 general election ballot for any office for which the parties were ballot-qualified in 2018 or 2016; (2) reduces the statutorily-imposed signature requirements for all other minor party and independent candidates by 90 percent; (3) enjoins enforcement of Illinois' requirement that nomination petitions be signed with "wet" handwritten signatures and instead authorizes nomination petitions to be signed electronically; (4)

enjoins enforcement of Illinois' requirement that original nomination petitions be submitted, and instead authorizes the electronic submission of photocopies or digital reproductions; (5) enjoins enforcement of Illinois' notarization requirement; and (6) extends the filing deadline from June 22 to July 20, among other relief. *See id.* On June 21, 2020, the Seventh Circuit denied a stay of Judge Pallmeyer's order. *See Libertarian Party of Illinois v. Cadigan*, 2020 WL 3421662 (7th Cir. June 21, 2020).

In another recently decided case, a federal district court held Michigan's primary election ballot access requirements unconstitutional as applied during the COVID-19 pandemic. *See Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1979126, at *2, *12 (E.D. Mich. Apr. 20, 2020) (recognizing signature-gathering challenges arising from the COVID- 19 pandemic and the State of Michigan's stay-at-home directive, ordering that certain candidates "[s]hall be qualified for inclusion on the August 4, 2020 primary election ballot if the candidate submits fifty percent of the number of valid signatures required by" a Michigan election law, and ordering Michigan's Director of Elections to "adopt and promulgate" appropriate "regulations providing for an additional optional procedure that allows the collection and submission of ballot petition signatures in digital form by electronic means such as email"). On appeal, the Sixth Circuit affirmed the "the district court's order enjoin[ing] the State from enforcing the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates." *Esshaki v. Whitmer*, 2020 WL 2185553. __ Fed. Appx. __ (6th Cir., May 5, 2020). It was only in terms of remedy that the Sixth Circuit remanded the matter to the District Court: "we are instructing the State to select its own adjustments so as to reduce the burden on ballot access, narrow the restrictions to align with its interest, and thereby render the application of the ballot access provisions constitutional under the circumstances." *Id*. at *2. The Sixth Circuit also advised the State that the simplest way to proceed was for it to implement what the District Court had ordered,

*id.*, which is exactly what happened in the end. On May 8, 2020, Michigan agreed to reduce its signature collection requirement by 50 percent, which is what the District Court had previously required. *See* Richard Winger, *Michigan Secretary of State Now Agrees to 50% Cut in Number of Primary Petition Signatures*, Ballot Access News, May 8, 2020.[2]

And in Utah, Chief Judge Robert Shelby of the federal district court granted relief to a candidate seeking to run in the Republican Party primary election for governor. *See Garbett v. Herbert*, 2020 WL 2064101 (D. Utah April 29, 2020). In that case, the plaintiff had collected approximately 21,000 signatures to comply with a 28,000-signature requirement by the April 13, 2020 filing deadline, and alleged that he would have complied with the requirement but for the burden imposed by the COVID- 19 pandemic and the governor's ensuing orders imposing "stay at home" and "social distancing" requirements. In granting relief, the Court reasoned that the plaintiff had been prevented from petitioning for 32 percent of that statutory period, and therefore reduced Utah's signature requirement by the same percentage. *See id.* at * 18.

In each of the foregoing cases, the courts readily concluded that the challenged laws imposed severe burdens as applied in the context of the COVID- 19 pandemic because they failed to provide the plaintiffs with a lawful procedure to qualify for the ballot. The challenged provisions thus failed to withstand constitutional scrutiny under the *Anderson-Burdick* analysis. The same is true here.

Mr. Dhillon urges this Court to reduce the 0.05% signature requirement he faces to 0.1% signatures and to extend the time for submitting signatures from August 3, 2020, to August 28, 2020, which gives SBE time to validate the signatures, create the ballot and mail the ballot by September 19, 2020, or, in the alternative, remove the signature requirement solely for the 2020

election due to the pandemic.

### III. MR. DHILLON WILL SUFFER IMMEDIATE AND IRREPARABLE INJURY

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Newsom ex rel. Newsom v. Albemarle County School Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). *See also WV Ass'n of Club Owners and Fraternal Services, Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) ("...a plaintiff's claimed irreparable harm is "inseparably linked" to the likelihood of success on the merits of plaintiff's First Amendment claim.").

As the Third Circuit has explained, where a court concludes that ballot access requirements are likely unconstitutional as applied, "it clearly follows that denying [Plaintiffs] preliminary injunctive relief will cause them to be irreparably injured." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3rd Cir. 1997). Specifically:

> Plaintiffs' voting and associational rights are burdened by their inability to nominate, support, and vote for candidates who represent their beliefs. If the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election.

*Id.* Unless the Court grants Mr. Dhillon preliminary relief, he will suffer the same irreparable injury. If his name is not on the 2020 General Election Ballot, the infringement of his First Amendment right cannot effectively be remedied after the election.

### IV. THE BALANCE OF EQUITIES FAVORS MR. DHILLON

The harm that Mr. Dhillon will suffer in the absence of the requested relief is plain: he will be excluded from Maryland's November 3, 2020 General Election ballot.

By contrast, Defendants will not suffer any harm if the Court grants Mr. Dhillon the requested relief. Should the Court grant Mr. Dhillon relief and he obtains the signatures, or the requirement be removed, the only burden to SBE would be the addition of one name to the General Election Ballot. Further, the universe of potential candidates is now set given that the date by which a

prospective independent candidate has to declare his or her intent to seek nomination by petition has passed.

No harm will come to SBE or the State of Maryland if the Court grants similar relief here. The balance of harms therefore weighs strongly in Mr. Dhillon's favor.

### V. AN INJUNCTION IS IN THE PUBLIC INTEREST

Finally, granting Mr. Dhillon injunctive relief is in the public interest because, as the Supreme Court has observed, "all political ideas cannot and should not be channeled into the programs of our two major parties." *Williams v. Rhodes*, 393 U.S. 23, 39 (1968) (citation omitted). Yet that is precisely what will happen in Maryland, due to the COVID-19 pandemic and Governor Hogan's ensuing executive orders if independent candidates, such as Mr. Dhillon, cannot collect sufficient signatures to appear on the General Election ballot. Further, "in the absence of legitimate, countervailing concerns," the Third Circuit has concluded, "the public interest clearly favors the protection of constitutional rights, including the voting and associational rights of alternative political parties, their candidates and their potential supporters." *Council of Alternative Political Parties*, 121 F.3d at 883-84.

Here, there are no legitimate countervailing concerns. Mr. Dhillon's request for injunctive relief arises because SBE has failed to provide him with a lawful and constitutional procedure to qualify for Maryland's November 3, 2020 general election ballot. But "the enforcement of an unconstitutional law vindicates no public interest." *KA ex rel Ayers*, 710 F.3d at 114 (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3rd Cir. 2003) ("Neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law")). Consequently, the public interest weighs in favor of granting Plaintiffs injunctive relief.

## VI. NO BOND IS NEEDED AS SECURITY

Federal Rule of Civil Procedure 65(c) states that security is required for an injunction. Courts have often observed that security is not mandatory under Rule 65(c) and can be dispensed with at the discretion of the court. *See Pashby v Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013); *Zambelli Fireworks Mfg., Inc v. Wood,* 593 F.3d 412, 426 (3rd Cir. 2010); *Moltan Co. v Eagle-Picher Industries, Inc,* 55 F.3d 1171, 1176 (6th Cir. 1995). This is especially true in the context of voting rights and ballot access. *See*, *e.g.*, *Moore v Brunner*, 2008 WL 232530, at *5 (S.D. Ohio 2008). No security is needed in this case, as preliminary relief threatens no financial harm to Defendant.

## CONCLUSION

The reasons stated above Mr. Dhillon respectfully requests that the Court enter a preliminary injunction prohibiting the strict enforcement of EL §§ 5-703(d), 5-703(e), and 5-703(f), and directing the Defendant to place Mr. Dhillon's name on the 2020 General Election ballot for the office of Mayor of Baltimore City if he submits a petition with signatures of 0.1% voters registered in Baltimore City on or before August 28, 2020; or, in the alternative, removing the signature requirement for independent candidates for the 2020 General Election.

Dated: July 29, 2020                    Respectfully submitted,

                                                  ___/s/_ Lawrence S. Greenberg
                                                  Lawrence S. Greenberg, Bar Number: 23642
                                                  Greenberg Law Office
                                                  6. E. Biddle St.
                                                  Baltimore, Maryland  21202
                                                  Telephone: 410.539.5250
                                                  Facsimile: 410.625.7891
                                                  larry@greenberglawyers.com

                                                  ___/s/_Mandeep Chhabra___
                                                  Mandeep Chhabra, Bar Number: 26446

                                                                      Cochran and Chhabra  
                                                                      116 B Cathedral Street  
                                                                      Annapolis, MD 21401  
                                                                      Telephone: 410.268.5515  
                                                                      Facsimile: 410.268.2139  
                                                                      mandeep@cochranandchhabra.com  
                                                                      Counsel for Kahan S. Dhillon, Jr., Plaintiff