IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAHAN S. DHILLON, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-20-2197 |
| JOHN C. WOBENSMITH, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kahan S. Dhillon, Jr. ("Plaintiff" or "Dhillon"), an unaffiliated prospective Baltimore City mayoral candidate in the November 2020 General Election, brings state and federal constitutional challenges to the Maryland election law signature-gathering requirements applicable to unaffiliated candidates who wish to appear on the General Election ballot. *See* Md. Code Ann., Election Law ("Elec. Law") §§ 5-703(d), 5-703(e), and 5-703(f). Dhillon requests a preliminary injunction which would lessen the existing requirements, and permit him to appear on the General Election ballot, provided that he submits a nomination petition bearing 400 signatures by August 28, 2020. Dhillon seeks to enforce the proposed injunction against Defendants John C. Wobensmith, in his official capacity as Secretary of State for Maryland, and Linda H. Lamone, in her official capacity as State Administrator of Elections.

In light of state government restrictions imposed in response to the COVID-19 pandemic, efforts to gather signatures on petitions have proven difficult. These difficulties have resulted in recent actions in this Court seeking relief from state election law requirements. Within the past six weeks, this Court has issued Consent Judgments reflecting the agreement

by the State Board of Elections to reduce certain requirements.[1]  Specifically, with respect to this case, the signature-gathering requirements for unaffiliated candidates have already been significantly relaxed to account for difficulties associated with the COVID-19 pandemic.

Ordinarily, to obtain nomination as an unaffiliated candidate in the Baltimore City mayoral election, Dhillon would need to submit a petition bearing "wet" (*i.e.*, actual ink) signatures representing 1% of the total number of registered voters who are eligible to vote for Mayor (4,123 signatures) by August 3, 2020.  *See* Md. Code Ann., Elec. Law §§ 5-703(d), 5-703(e), and 5-703(f).  On April 22, 2020, the Maryland State Board of Elections promulgated SBE Policy 2020-01, which permits unaffiliated candidates to gather electronic signatures, instead of the wet signatures ordinarily required.  (Compl. ¶ 20.)  On July 20, 2020, this Court issued a Consent Judgment in *Ivey v. Lamone*, RDB-20-1995, which halved the signature-gathering requirements of Election Law § 5-704(e).  *See Ivey v. Lamone*, RDB-20-1995, 2020 WL 4197044 (D. Md. July 20, 2020).  As a result, Dhillon only needs to obtain electronic signatures corresponding to 0.5% of the electorate (2,062 signatures) by August 3, 2020.  Dhillon admits that he has not yet attained sufficient signatures to satisfy that requirement, or even his own proposed 400-signature requirement.

Dhillon filed the pending Motion for a Preliminary Injunction on Wednesday, July 29, 2020.  (ECF No. 2.)  Immediately after receiving his submission, this Court conducted a teleconference with counsel for all parties and issued a Letter Order setting an expedited briefing schedule.  (ECF No. 4.)  On Thursday, July 30, 2020, this Court conducted a public, telephonic hearing to address Dhillon's Motion.

---

[1] *See Maryland Green Party v. Hogan*, ELH-20-1253 (D. Md.); *Ivey v. Lamone*, RDB-20-1995 (D. Md.).

Dhillon has failed to satisfy any of the criteria required to justify the extraordinary relief of a preliminary injunction. The present signature-gathering requirements, which are the product of the Maryland General Assembly's lawmaking, the State Board of Elections' policy modifications, and a Consent Judgment reached in prior litigation, strike a delicate balance between the interests of unaffiliated candidates in accessing the ballot and Defendants' interest in conducting an orderly General Election. By easing the ordinary requirements, this Court has already ensured that unaffiliated candidates face a fairly light hurdle, and yet would still need to muster a "modicum of support" before appearing on the ballot. *See Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020). Further modification of these already-altered election law requirements is unnecessary and would run afoul of the public interest, potentially jeopardizing the integrity of the upcoming election. Accordingly, the Motion for a Preliminary Injunction (ECF No. 2) is DENIED.

## BACKGROUND

Under Maryland law, unaffiliated candidates who wish to appear on the General Election ballot ordinarily must submit a petition bearing the signatures of the lesser of either 10,000 registered voters, or 1% of the total number of registered voters, who are eligible to vote for the office for which the nomination by petition is sought, by the first Monday in August in the year in which the General Election is held. Md. Code Ann., Election Law ("Elec. Law") §§ 5-703(d), 5-703(e), 5-703(f). In this year's Baltimore City mayoral election, this rule would ordinarily require an unaffiliated candidate to submit a petition with at least 4,123 signatures by Monday, August 3, 2020.

On January 24, 2020, Dhillon filed a timely Declaration of Intent to seek nomination for the office of Mayor of Baltimore City in the November 2020 General Election. (ECF No. 1 ¶ 26.) Soon thereafter, Dhillon began seeking signatures in support of his petition to appear on the General Election ballot. (*Id.* ¶¶ 31-32.) Dhillon's campaign was quickly upended by social distancing mandates issued in response to the COVID-19 pandemic. On March 5, 2020, Maryland Governor Lawrence J. Hogan issued a Proclamation declaring a State of Emergency and Existence of Catastrophic Health Emergency. (*Id.* ¶ 12.) Subsequent orders closing non-essential businesses and forbidding large gatherings of people followed. (*Id.* ¶ 14.) A stay-at-home order went into effect statewide from March 30, 2020 and remained in effect through May 15, 2020. (*Id.* ¶ 14.) In Baltimore City, Mayor Bernard C. "Jack" Young issued a similar set of orders, including a stay-at-home order that remained in effect until June 8, 2020. (*Id.* ¶ 16.)

On April 22, 2020, in response to the campaigning difficulties posed by the COVID-19 pandemic, the Maryland State Board of Elections promulgated SBE Policy 2020-01, which authorized the gathering of electronic signatures on petitions for nomination as an unaffiliated candidate. (ECF No. 1 ¶ 20.) Despite this relaxation of ordinary election law requirements, Dhillon experienced difficulty obtaining the requisite signatures. (*Id.* ¶ 34.) On April 21, 2020, he submitted correspondence to Michael R. Cogan, Chairman of the Maryland State Board of Elections, requesting that the Board waive the signature requirement for the November 2020 General Election. (*See* ECF No. 1-2.) On May 4, 2020, Dhillon's request was denied. (ECF No. 1 ¶ 35.) Dhillon subsequently submitted additional correspondence to the Board in May

and June 2020 to propose alternative alterations to the signature-gathering requirement. (*Id.* ¶¶ 39, 42.) Those proposals were not accepted. (*Id.*)

Dhillon alleges that he experienced significant difficulties obtaining signatures using ordinary campaign strategies even after social distancing restrictions began to ease in Baltimore City in late June 2020. His campaign staff allegedly refused to canvas door-to-door for fear of contracting the coronavirus. (ECF No. 1 ¶ 43.) Many Baltimore City residents expressed discomfort interacting with canvassers as a result of COVID-19 fears. (*Id.* ¶ 51.) Consequently, Dhillon had only obtained 208 signatures through June 2020. (*Id.* ¶ 44.) At the preliminary injunction hearing of July 30, 2020, counsel for Dhillon advised this Court that he had only collected about 300 signatures.

On July 20, 2020, this Court issued a Consent Judgment in a related case, *Ivey v. Lamone*, RDB-20-1995, which reduced the signature gathering requirements for unaffiliated candidates by half (*i.e.*, requiring the lesser of 5,000 signatures or 0.5% of eligible voters). *Ivey v. Lamone*, RDB-20-1995, 2020 WL 4197044 (D. Md. July 20, 2020). As a result of SBE Policy 2020-01 and the Consent Judgment, Dhillon only needs to obtain 2,062 valid electronic or wet signatures by Monday August 3, 2020. On July 28, 2020, Dhillon commenced this action, alleging that even this relaxed signature-gathering requirement violated his rights under the First and Fourteenth Amendments to the United States Constitution, in addition to several provisions of the Maryland Constitution. Dhillon seeks a preliminary injunction which would further reduce the signature threshold to 0.1% (about 400 signatures) and extend the filing deadline to August 28, 2020.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir. 2001). In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the Supreme Court in *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365 (2008) which requires a showing that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors the movant; and (4) that an injunction is in the public interest. 555 U.S. at 20; *accord. Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020); *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 236 (4th Cir. 2014);

The movant must show more than a "grave or serious question for litigation"; instead, it bears the "heavy burden" of making a "clear showing that [he] is likely to succeed at trial on the merits." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009); *Int'l Brotherhood of Teamsters v. Airgas, Inc.,* 239 F. Supp. 3d 906, 912 (D. Md. 2017) ("Because a preliminary injunction is 'an extraordinary remedy,' it 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" (quoting *Winter*, 555 U.S. at 22, 129 S. Ct. 386)).  Still, an injunction "is not granted as a matter of course, and whether to grant the injunction still remains in the equitable discretion of the [district] court even when a plaintiff has made the requisite showing." *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (internal citations omitted).

**ANALYSIS**

Further alteration of Maryland's election laws by way of a last-minute preliminary injunction is neither required by law nor beneficial to the public interest. The presently relaxed signature-gathering requirements for unaffiliated candidates pose only a modest burden. The forms of injunctive relief sought by Plaintiff—both a further reduction in the number of signatures required or a postponement of the petition filing deadline—would only sow confusion at this late stage and potentially jeopardize the integrity of the election. Accordingly, there is no basis for this Court to enter a preliminary injunction in this matter.

I.   **Likelihood of Success on the Merits.**

To obtain a preliminary injunction, Plaintiff must make a strong showing that he is likely to succeed on the merits. *Winter*, 129 S. Ct. at 376. As the United States Court of Appeals for the Fourth Circuit very recently explained, ballot-access restrictions always implicate rights guaranteed by the First and Fourteenth Amendments. *Buscemi v. Bell*, 964 F.3d 252, 262 (4th Cir. 2020). Such restrictions are nevertheless necessary to ensure that "some sort of order, rather than chaos, . . . accompan[ies] the democratic processes." *Buscemi*, 964 F.3d at 262 (quoting *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995). To determine whether a ballot-access measure violates the constitution, this Court must weigh the nature of the Plaintiff's asserted injury to his First and Fourteenth Amendment rights against the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Buscemi*, 964 F.3d at 262 (quoting *Burdick v. Takushi*, 504 U.S. 428, 112 S. Ct. 2059 (1992)). Elections laws which impose a "severe burden on ballot access" are subject to strict scrutiny; those which pose only a "modest burden will be upheld if the state can articulate its

important regulatory interests." *Buscemi*, 964 F.3d at 263. (internal quotation marks and citations omitted).[2]

Numerous federal courts have found that the COVID-19 pandemic has transformed ordinarily ballot-access measures into severe burdens that potentially offend the United States Constitution. These courts granted preliminary injunctions to soften such requirements. *See, e.g.*, *Libertarian Party of Illinois v. Pritzker*, 20-cv-2112, --- F. Supp. 3d ---, 2020 WL 1951687 (N.D. Ill. April 23, 2020) (granting agreed-upon preliminary injunction order to permit collection of electronic signatures, extend petition deadline, , and reduce numerical signature requirements by 90%); *Garbett v. Herbert*, RJS-20-0245, ---F. Supp. 3d ---, 2020 WL 2064101 (D. Utah April 29, 2020) (reducing numerical signature gathering requirement in proportion to time lost for signature-gathering due to COVID-19). At least one such injunction was reversed on appellate review. *See Esshaki v. Whitmer,* --- F. App'x ---, 2020 WL 2185553 (6th Cir. May 5, 2020) (staying injunction and faulting the district court for engaging in a "plenary re-writing of the State's ballot-access measures").

A ballot-access measure which has already been modified to accommodate difficulties posed by the COVID-19 pandemic is less likely to offend rights guaranteed by the Constitution. The United States District Court for the District of Maine recently denied a preliminary injunction in such circumstances. *Bond v. Dunlap*, NT-20-0216, 2020 WL 4275035, at *15 (D. Me. July 24, 2020). In that case, Plaintiff Tiffany Bond ("Bond") asserted an as-applied challenge to a Maine ballot-access measure which required unaffiliated candidates to

---

[2] Although Plaintiff also brings Maryland Constitution claims in addition to his federal claims, he agrees that the *Burdick* framework governs this Court's analysis. (ECF No. 2-1 at 4.)

submit a nomination petition bearing the "wet" signatures of 4,000 Maine voters by June 1, 2020 in order to appear on the General Election ballot. *Bond*, 2020 WL 4275035, at *5. As a result of the pandemic, the Governor of Maine had already issued an Executive Order which extended the filing deadline to July 1, 2020, but did not alter the number of signatures required or permit electronic signatures. *Id.*

Applying the *Burdick* framework followed by the Fourth Circuit in *Buscemi*, the Court found that Bond's burden had already been lessened by the Governor's Order. *Bond*, 2020 WL 4275035, at *9. Addressing the State's interests, the Court observed that the signature-gathering requirements served to prevent voter fraud and ensured that candidates on the ballot had received some modicum of public support. *Id.* *10-11. Finally, in denying a preliminary injunction, the Court noted that the Plaintiff had failed to cite a single case in which "a federal court enjoined enforcement of a state's numerical signature requirement over the state's opposition and after the state had already modified its requirements." *Id.* at 14.

In this case, Plaintiff challenges a signature-gathering requirement which has now twice been modified in response to the COVID-19 pandemic. On April 22, 2020, the Maryland State Board of Elections promulgated SBE Policy 2020-01, which authorized the gathering of electronic signatures on petitions for nomination as an unaffiliated candidate. (ECF No. 1 ¶ 20.) On July 20, 2020, this Court issued a Consent Judgment in a related case, *Ivey v. Lamone*, RDB-20-1995, which reduced the signature gathering requirements for unaffiliated candidates by half (*i.e.*, requiring the lesser of 5,000 signatures or 0.5% of eligible voters). *Ivey v. Lamone*, RDB-20-1995, 2020 WL 4197044 (D. Md. July 20, 2020).

In light of these changes, Dhillon need only clear a fairly low hurdle in his race to the General Election: he must acquire only 2,068 signatures (electronic or otherwise) by August 3, 2020. This Court is aware that even this easy burden feels heavier during a pandemic, when voters are unwilling or unable to associate with prospective candidates. Nevertheless, such requirements are necessary to ensure that candidates on the ballot have received some modest degree of public support, to reduce ballot overcrowding, and to provide sufficient time for the Board of Elections to prepare a ballot in time for the November election.

As in *Bond*, the State's actions in this case have preserved the validity of its ballot-access measures. The signature-gathering requirements, as modified by SBE Policy 2020-01 and the Consent Judgment issued in *Ivey v. Lamone*, RDB-20-1995, have re-balanced the interests of prospective candidates and the State in light of the difficulties posed by COVID-19. Under such circumstances, the Constitution does not require further judicial intervention. Accordingly, Plaintiff has not demonstrated that he is likely to succeed on the merits, and a preliminary injunction will not issue.

## II. Irreparable Harm.

Plaintiff argues that the alleged constitutional deprivations brought about by the enforcement of Election Law §§ 5-703(d), 5-703(e), and 5-703(f), even as modified by the State Board of Elections and the Consent Judgment, constitute irreparable harm. As this Court finds that Plaintiff is unlikely to succeed on his constitutional claims, this Court also finds that Plaintiff has failed to demonstrate that he will suffer an irreparable harm in the absence of an injunction.


## III. Balance of the Equities and Public Interest.

Even if Plaintiff had shown a likelihood of success on the merits or irreparable harm, a preliminary injunction would not be appropriate in this case because further modification of the election laws applicable to unaffiliated candidates would cause Defendants significant hardship and would be detrimental to the public interest. The Plaintiff's proposed preliminary injunction would dramatically reduce the amount of time afforded to the Board of Elections to prepare General Election ballots while simultaneously increasing the pool of potential unaffiliated candidates, producing a perfect storm of election difficulties. As the Fourth Circuit has observed, preliminary injunctions which would threaten the orderly administration of an election are routinely denied, even when there is some likelihood of success on the merits. *Perry v. Judd*, 471 F. App'x 219, 227-28 (4th Cir. 2012) (citing *Fishman v. Schaffer*, 429 U.S. 1325, 1330, 97 S. Ct. 14 (1976); *Westermann v. Nelson*, 409 U.S. 1236, 1236-37, 93 S. Ct. 252 (1972); *Williams v. Rhodes*, 393 U.S. 23, 34-35, 89 S. Ct. 5 (1968)).

The deadline extension Plaintiff requests would not permit sufficient time for the Board of Elections to prepare General Election ballots. Maryland election law sets the nomination petition deadline as August 3, 2020. The Board of Elections is granted 20 days (until August 23, 2020) to verify the signatures on the petitions by matching them to the voter rolls. Elec. Law § 6-210(c). Aggrieved parties may seek judicial review of the petitions until August 26, 2020. Elec. Law § 6-210(e)(2)(i). In the interim, the State Board of Elections will begin preparing ballots in time to meet the September 19, 2020 ballot-mailing deadline established by federal law. *See* 52 U.S.C. § 20302(a)(8). Dhillon's requested deadline extension

would abruptly compress this timeline, potentially leading to ballot blunders of the kind recently observed in the Baltimore City primary elections.[3]

Reducing the numerical signature requirement would compound these problems. Plaintiff seeks to *further* reduce the signature requirement so that he may appear on the ballot with only about 400 signatures, all of which may be obtained electronically. This modification would expand the pool of unaffiliated candidates by an uncertain quantity at the eleventh hour, potentially requiring more signature verification efforts on the part of election officials. Such relief would disrupt the compromise struck in *Ivey* and cause unneeded problems in an election cycle that is already complicated by the effects of a pandemic. Accordingly, the Plaintiff has failed to show that the equities tip in his favor or that the public interest would be served by the proposed injunction.

## CONCLUSION

Maryland election law signature-gathering requirements for unaffiliated candidates have already been modified to account for problems associated with the COVID-19 pandemic. The Court declines to issue a preliminary injunction which would disrupt the balance struck by Board of Election policy modifications and the Consent Judgment issued in *Ivey v. Lamone*, RDB-20-1995. For these reasons, and the reasons stated above, Plaintiff's Motion for a Preliminary Injunction (ECF No. 2) is DENIED.

---

[3] *See* Emily Opilo, et al., *Concern from Candidates, Officials as Error Creates Delay in Release of Returns*, THE BALTIMORE SUN, June 3, 2020, available at: https://www.baltimoresun.com/politics/elections/bs-md-pol-ballot-error-baltimore-district-1-20200603-n26t43fkmjadplqeqybloj4dki-story.html.

A separate Order follows.

Dated: July 31, 2020

                                                          \_\_\_\_\_/s/_____

                                                         Richard D. Bennett
                                                         United States District Judge